JAMES HOLMAN VS. BENJAMIN L. BRITTON — Appeal from Lamar County.

Where none of the evidence adduced upon the trial of a cause is sent up in the record, and the charge of the court below (which has been excepted to) relates to and has a bearing upon facts which could be shown only by the evidence, it is impossible to decide whether such charge had any influence on the issue between the parties. This can be ascertained only by the application of the charge to the facts actually adduced on the trial. [*Ante*, 284; *post*, 305; 4 Tex. 235; 11 Tex. 649; 16 Tex. 335, 563; 18 Tex. 616; 23 Tex. 441.]

In such a case, the facts being embodied in the record, the cause stands in the appellate court as if either no evidence, or such only as authorized the verdict, had been adduced, and the charge excepted to must be regarded as an abstract proposition unconnected with the case or with the issue, and as not affecting the correctness of the judgment. [12 Tex. 209.]

Every reasonable intendment should be made in favor of the correctness of a judgment. [8 Tex. 143.]

The appellant, the plaintiff in the court below, prayed for an injunction to restrain execution on a judgment previously confessed by him, on the ground that the execution [**298**] had been issued in violation of an agreement between the attorney of the defendant below, appellee here, and himself, made at the time of the said confession of judgment.

The injunction granted was dissolved on the coming in of the answer, and on the final hearing the jury found for the defendant.

The record contains no statement of facts. The following bill of exceptions alone appears, to wit: " Be it remembered that at the trial of this cause the judge charged the jury that under the pleading in the case substantial proof of the contract between Holman and the attorney of Britton was not sufficient, but that the contract must be proven literally as alleged in the petition, to which opinion of the court the plaintiff excepts.

                (Signed) "JOHN T. MILLS, District Judge."

*Gillespie*, for appellant, admitted as correct the general doctrine that every presumption is to be indulged in favor of the verdict, and that where a charge of the court is complained of, it must affirmatively be shown not only to be wrong, but that

it produced the result complained of. He contended, however, that the charge of the court was clearly wrong in this case; that this was not an ordinary suit by petition and answer, but a proceeding in chancery by a bill for an injunction, sworn to, with exhibits attached; which was demurred to and answered; the injunction dissolved and the bill retained and case submitted on bill, answer and exhibits. That in such cases the bill and exhibits were some proof, and to all facts not directly responded to, full proof.

*Morrill*, for appellee. As the proof and statement of facts were not sent up, and as this court cannot know that the charge complained of, even if *erroneous in every possible supposed case*, was the cause of the verdict given; and as this court cannot say that a different verdict and judgment would [**299**] have been rendered if the charge had not been given, the judgment cannot therefore be reversed. .

The judgment of the court below will not be set aside for erroneous instructions unless the bill of exceptions shows the evidence upon which the instructions were based. Samuel v. Withers, 9 Missouri, 166; Watson v. Brown, 14 Ohio, 473.

In this case the members of the court delivered separate opinions.

Mr. Chief Justice HEMPHILL.

There is but one exception sent up with the record, and that was to the charge of the judge that under the pleadings in the case substantial proof of the contract between Holman and Amos Morrill, attorney of Britton, was not sufficient, but that the contract must be proven literally as alleged in the petition.

There is no statement of facts sent up with the record, and the instruction relating to and bearing on facts which could be shown only by evidence, it is impossible to decide whether the instruction had any influence on the issue between the parties.

This could be ascertained only by the application of the instruction to the facts actually adduced on the trial. The proof may have been wholly insufficient to establish the allegations of the petition or to authorize the jury in finding a different

verdict, and, consequently, the instruction could not have operated any actual injury to the plaintiff. The facts not being embodied in the record, the case stands here as if either no evidence had been adduced, or such only as authorized the verdict; and, in either event in this case, the charge must be regarded as an abstract proposition, unconnected with the case or with the issue, as affected by the evidence which may have been adduced before the jury.

To reverse a judgment it is not sufficient that there may have been error in the opinion of the court on an immaterial [**300**] point or one extraneous to the issue, or the bearing of which on the determination of the court below cannot be ascertained from facts which are made to appear from the record.

There must be some *possible* injury resulting from the erroneous opinion, before the court is authorized to reverse a judgment; and this possibility is to be ascertained in this case alone by the application of. the charge to the evidence; and this we are unable to do from there being no evidence presented in the record.

Every reasonable intendment should be made in favor of the correctness of a judgment, and our jurisdiction can be only appropriately exercised in redressing parties really *aggrieved* by the decisions of the lower court. And it is the duty of the appellant to show, from the record, that the *act* of the court alleged to be erroneous operated by *possibility* to the prejudice of his rights. This, as we have before said, could only be shown, under the charge which was given, from the facts to which it was applied; and these not being embodied in the record, we cannot say that there was error in the judgment of the court below.

It is ordered, adjudged and decreed that the same be affirmed.

*Vide* Preston v. Harvey, 2 Hen. & Munf. 67; Stephens and Everett v. The State of Ohio, 14 Ohio, 390; Watson v. Brown and Fuller, 14 id. 480; Cresurger v. Lessee of Welch, 15 id. 190; Samuel v. Withers and Bristow, 9 Missouri, 167.

Mr. Justice LIPSCOMB. In this case it appears to me that

the charge of the judge, as presented by the bill of exceptions, was wrong, and that the record will show that it was not an abstract opinion of the judge, irrelevant to the matter at issue before the jury. Were it so, I would fully assent to the decision that such abstractions cannot properly be the subject of revision in this court. It is true that there is no statement of the facts sent up with the record; but I hold, that when [301] the law is given in charge by the judge to the jury, if any part of the record will raise a reasonable presumption that the charge had a relation to, and an influence on, the subject of inquiry before the jury, such charge is fairly before us for revision. I believe the true distinction to be this: if the court is asked to give a particular charge, and refuses to give it, the party excepting should show the relevancy of such charge in his exceptions. If he does not, the appellate court is bound to disregard it, unless its relevancy should be otherwise apparent, because it would be unreasonable to suppose it would have been refused by the judge if relevant.

The record shows that the appellant sought relief for the violation of an agreement between himself and the counsel of Britton, by which agreement he had been induced to confess judgment. When the judge then charges the jury, trying the facts set up in the petition, that it is not sufficient, under the pleadings, for the contract between Holman and Amos Morrill, the attorney of Britton, to be substantially proven, but that the contract must be proven literally, as alleged, I cannot consider it as an abstract question of law, bearing no relation to the subject before the jury, but I am bound to refer the charge to the contract set up in the petition, and as exerting a potent influence on their finding. The very terms used by the judge imply that the charge was material, and that it related to the contract alleged to have been violated by the counsel after it had answered the end of inducing the party to confess judgment.

And I am yet to learn by what rule of evidence it is that a parol agreement must be literally proven. From the fact of its being by parol, the idea of literal proof would be repudiated. I concur in the affirmance of the judgment, but on a

totally different ground from the one relied on by the majority of the court, from which I am constrained to dissent. The ground of my concurrence is this: The petitioner sets out an agreement, and after stating it, he does not show in what manner it had been violated, to his injury. The evidence of [302] the record from the state of Arkansas does not show that he has been injured. His land had been levied on, it is true, but it does not appear to have been sold, or that he had suffered by a sacrifice of his property, as he had alleged, and this allegation was material to establish any equity arising out of his contract. On this ground alone, I rest my concurrence in the affirmance of the judgment.

Mr. Justice WHEELER. There being a difference of opinion among the members of the court in this case, I deem it proper to state, briefly, the views which I entertain of the question upon which we are divided in opinion.

The question between us is not, as I conceive, whether the charge given be correct as an independent proposition or legal principle. As to that we might not perhaps differ; though it does not clearly appear from the petition whether the agreement referred to was verbal or in writing, parol or a specialty; or whether the pleader intended to set it out literally, *in hæc verba*, or substantially, according to its tenor and effect, and the rule is that it must be proved as pleaded.

But admitting the charge given to be erroneous, is that, of itself, and *apart from any evidence either given or offered* in the case, sufficient to authorize a reversal of the judgment? I think not, upon the principles stated, and the authorities cited in the opinion of the court by the chief justice, and others which might be adduced. See cases cited in the case of Chandler v. The State, *post*, 305.

That there is a difference between the case of a charge refused and one voluntarily given by the court, no one will question. The law raises a presumption against the one and in favor of the other. The presumption is that the judge refused the one because irrelevant, or otherwise improper; and that he gave the other because relevant and proper. A charge refused

is aided by no presumption; while in favor of one voluntarily given, there doubtless is a general presumption of its relevancy and propriety. This arises from the [303] general rectitude which the law imputes to its ministers and all their official acts. But it is not to be hence inferred that this general, vague and indefinite presumption, when wholly unsupported by the case disclosed by the record, must not yield to the force of the superior and controlling presumptions in favor of the entire correctness and legality of the judgment. The authorities, to my mind, establish the contrary, and upon obvious reason and principle.

The judgment of a court is not to be lightly set aside and annulled. The presumptions in its favor are strong and controlling. Expressive of the degree of strength and weight to which they are entitled, it is said that " every presumption is in favor of the judgment." And it is an established rule that " a party seeking to reverse a judgment must make out an alleged error clearly and satisfactorily." Adverting to the reason of this rule a learned court has significantly said: " Any one who seeks to reverse a judgment must put his finger on the error, as every presumption is in favor of the correctness of judgments." 7 S. & M. 197. This has become the " uncontroverted maxim " of the law, recognized by courts of the highest authority, and whose opinions have been constantly quoted and relied on by this court. But if a judgment may be reversed upon the mere general presumption of the relevancy of an instruction given, when that relevancy does not appear from the record, then it cannot be that " *every presumption* " is to be indulged in favor of the judgment; and it is quite a mistake to say that the party seeking a reversal must " *make out* " an alleged error and must " *put his finger on the error.*" On the contrary the rule would seem to be reversed, and instead of *every* presumption being invoked in support of the judgment, it would be suffered to be overborne and reversed by a presumption of the weakest and most vague, indefinite and unsatisfactory character.

In my opinion the instruction given, as presented in the record, must be regarded as wholly immaterial, and as occupy-

ing [304] no higher ground than a mere abstract proposition, having no proper connection with the case, for the reason that it does not appear to have been at all pertinent or relevant to any case in evidence before the jury. Indeed no evidence whatever appears to have been adduced. There was a contract set out in the petition; but it nowhere appears that any evidence was offered in its support. How else could the appellant " *make out* " the alleged error than by showing, by his bill of exceptions or a statement of facts, that evidence, legal and proper, was offered, to which the instruction given applied? We certainly are not to presume error. But even did it appear that evidence was offered, unless it also appeared to have been legal and relevant, the judgment must stand.

If there had been any legal evidence offered to which the charge applied, or which could possibly have changed the result, it was the duty of the appellant to show it, and thus *make out* the alleged error. Otherwise we must suppose either that no evidence was offered, or that it was not brought up by the appellant, because he was conscious it did not support his case; and, in either view, the instruction complained of was wholly immaterial. It matters not what the contract *set out* was, or what the instructions to the jury were; if no legal evidence was offered in support of the contract or the plaintiff's case, the result could not possibly have been different. It would, it seems to me, be novel to reverse the judgment for a supposed erroneous instruction, when the appellant brings up nothing to show to this court that he was, or by possibility could have been, entitled to a verdict below, upon any possible or conceivable instruction which the court there might have given.

It is not then for the reason that there was no evidence of any *one particular allegation* in the petition that it seems to me the judgment ought to be affirmed; but for the reason that *there is in the record nothing to show that there was any evidence whatever given or offered in support of the plaintiff's case, or of any allegation or averment in his petition.* And it [305] is not enough, it seems to me, to authorize the reversal of a judgment that the judge may have stated erroneous

propositions as law, unless it be shown that they were material to the case. Each case must stand upon its own intrinsic merits, as disclosed by the record, and cannot be legally supported or assailed by anything which is not shown to have had a proper connection with or influence upon it in the court below.

---

### DAVID CHANDLER VS. THE STATE — Appeal from Travis County.

A judgment will not be reversed for an erroneous instruction unless the applicability of the instruction to the issue may be seen from the record. [4 Tex. 8.]

A party seeking to reverse a judgment must show that the judgment *is erroneous*. [*Ante*, 297.]

To authorize a reversal it must appear that the error complained of was in a matter material to the issue.

The felonious killing of a slave without malice, by a free white person, is manslaughter. [13 Tex. 575; 20 Tex. 151.]

The facts of this case, so far as the same are necessary to present the questions discussed and adjudicated in this court, are stated in the opinion.

*Gillespie* and *Hancock*, for appellant, insisted that there was error in the charge of the judge "that the admissions or confessions of the accused to a witness were the highest character of testimony to establish the guilt of the accused, and upon such testimony the jury were authorized to convict;" and they cited in support of this position, Joy on the admissibility of confessions, Law Lib. vol. 37, pp. 12, 65 and 111; 1 Phil. Ev. 166–67; 1 Bibb, 611; 4 Littell, 186; Hardin, 547; 1 Pirt. Dig. 376.

They also insisted "that the act of 1840, adopting the common law, brought with it the common law offenses, [**306**] and the common law meanings, and expressions and definitions. It did not include within its operation offenses committed either by slaves or upon them." Phil. Dig. p. 185, sec. 19; 1 Hill, 454; 2 Bailey, 98.

We must look to our own laws for the punishment of offenses of this character, as they could not be punished at