## Bud Petty v. The State.

No. 2.   Decided October 27, 1909.

Rehearing denied June 15, 1910.

**1.—Theft of Goats—Jury and Jury Law—Constitutional Jury.**

Where, upon appeal from a conviction of theft of goats, complaint was made for the first time in the brief of appellant that the verdict as copied in the judgment was signed by a person as foreman, who did not appear to have been a member of the jury trying the case, and it appeared from the record that twelve men composed the jury, giving their names, it must be assumed that the defendant was tried by a constitutional jury and that the clerk in copying the verdict improperly stated the name of the foreman. Davidson, Presiding Judge, dissenting.

**2.—Same—Evidence—Other Transactions.**

On trial of theft of five goats there was no error in admitting testimony to show possession of other animals of the same class by defendant belonging to prosecutor and which were likewise marked and branded as those alleged to have been stolen, the defendant having claimed good faith, and there was no error in refusing a requested charge to exclude this testimony.

**3.—Same—Continuance.**

Where, upon trial of theft of goats, the absent testimony was merely cumulative and it was defendant's third application, there was no error in overruling same.

**4.—Same—Charge of Court—Voluntary Return of Stolen Property.**

Where, upon trial of theft of goats, it was shown by all the testimony that no offer of return of the alleged stolen property was made until defendant had been found in possession thereof and charged with the theft of the same, there was no error in the court's failure to charge on voluntary return of stolen property.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial for theft of goats, the evidence was sufficient to sustain the conviction, the same will not be disturbed.

Appeal from the District Court of Bandera.   Tried below before the Hon. R. H. Burney.

Appeal from a conviction of theft of goats; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. R. Storms*, for appellant.—On question of illegal jury: Lott v. State, 18 Texas Crim. App., 627; Jester v. State, 26 Texas Crim. App., 369, and cases cited in the opinion.

On question of admitting evidence of theft of other goats: Mask

v. State, 34 Texas Crim. Rep., 136; Saldiver v. State, 55 Texas Crim. Rep., 177, 115 S. W. Rep., 584; Gardner v. State, 55 Texas Crim. Rep., 394, 117 S. W. Rep., 148.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant appeals from a judgment of conviction had in the District Court of Bandera County, on November 30, 1908, on a charge of theft of five goats, the property of Henry Haby. There are a number of questions raised in the record on which a reversal is sought, the most important of which we will discuss.

1. Complaint is made in the brief filed by counsel for appellant that the verdict as copied in the judgment is signed by a person who does not appear to have been a member of the jury trying the case. The following facts appear in the record of the case; the judgment contains the following recital: "Defendant Bud Petty in open court pleaded not guilty to the charge contained in the indictment, thereupon a jury, to wit: H. J. Hermes, Albert Rees, Oscar Gabriel, George Keller, J. W. Anderwald, E. F. Kindla, Ed Fries, Will Thomason, Fletcher Pate, F. J. Riddick, Joe Holt, Lee Humphreys, was duly selected, empaneled and sworn." Thereafter the following verdict is recited in the judgment: "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment at two years confinement in the penitentiary. (Signed) John Eckhart, Foreman." It will thus be seen from a comparison of the names of those recited who composed the jury that John Eckhart was not a member of the panel, and it is claimed that in this condition of the record it affirmatively appears that the jury trying appellant was not composed of the constitutional number of jurymen by which all parties in felony cases must be tried. Section 13 of article 5 of our Constitution, so far as here applicable, is as follows: "Grand and petit juries in the District Court shall be composed of twelve men." Article 632 of our Code of Criminal Procedure is as follows: "In the District Court the jury shall consist of twelve men. In the county and inferior courts the jury shall consist of six men." Questions somewhat similar to the one here presented have quite frequently arisen and received consideration by this court. The earliest case is that of Rich v. State, 1 Texas Cr. App., 206. In that case the record contained the following recital: "This cause being called for trial, thereupon came the parties, by their attorneys, and announced themselves ready for trial. The defendants, being duly arraigned by the court, and after the reading of the indictment, entered a plea, each for himself, of not guilty. Whereupon the court impaneled the following jury: David Doyles, L. J. Powell, T. B. Scott, Wm. King, John George, A. Brown, W. P. Wolf, J. P. Coffey, J. L. Montgomery, W. P. Lamb, and C. C. Frost, and proceeded with

the investigation of this cause." In discussing this matter the court say: "We might, perhaps, be warranted in presuming that each of the jurors named was a competent juror; or if the record had stated that the jury was composed of twelve competent jurors, we might be authorized to presume the clerk had omitted a name in transcribing the record; but in the absence of any such statement, can we, by presuming, supply the omission? and which we must do in order to come to the conclusion that the appellant had been deprived of his liberty by due course of law, as set out in the bill of rights. 'The judgment of the court can not depend on speculations or probabilities as to the correctness or accuracy of the transcripts upon which we are required to act. If they are erroneous, it is the duty of the parties interested in, or to be affected by them, to point out their errors, and take the proper steps for their correction. When this is not done, evidently the court must treat and act upon them as being in all things correct as certified by the clerk.' Gorman v. The State, 42 Texas, 221." A somewhat similar question came before the court in the case of Huebner v. State, 3 Texas Cr. App., 458. This probably is the strongest case in favor of appellant contained in the books. It is there stated that "The record states that twelve jurors came, etc., but only "eleven are named. This, we believe, is fatal to the judgment." In this connection the court uses this language: "Where the record sets out the names of the jurors, and upon an examination there is any less than twelve, unless the record discloses that a less number than twelve was accepted by both parties, or that one or more of the jury were excused under some special provision of law, it is fatal to the judgment." Again, in the case of Morton v. State, 3 Texas Cr. App., 510, the following facts appeared: There the verdict was not signed by anyone as foreman of the jury, and the judgment did not set out and recite the names of the jurors who tried the case. In discussing this matter, Judge White, speaking for the court, uses this language: "Whilst our statute requires the jury to appoint a foreman, in order that their deliberations may be conducted with regularity and order (Pasc. Dig., art. 3076), and seems to contemplate that the verdict in criminal cases shall be in writing, because it provides that, 'when the jury have agreed upon a verdict, they shall be brought into court by the proper officer, and, if when asked they answer they have agreed, the verdict shall be read aloud by the clerk,' (Pasc. Dig., art. 3088), yet we know of no express provision requiring the verdict to be signed by the foreman, though that undoubtedly would be the better practice, and it has become, we believe, almost the uniform practice throughout the State. In the absence of any such provision, we think the reasoning of the court in Burton v. Bondies establishes the proper rule.

"In that case Mr. Justice Wheeler says: 'We are not aware of any rule of the common law, or of any statute, which requires a verdict

to be signed. That is not an ingredient in the definition of a verdict, which is: The answer of a jury given to the court concerning the matter of fact in any case committed to their trial. 6 Jac. Law Dic., 340. And signing is not believed to be a requisite or essential to its validity. Such was the opinion of the Supreme Court of Kentucky in The Commonwealth v. Ripperdon, Litt. Sel. Cas. 195, where they express it as their opinion that there is no law which requires the verdict of a petit jury, either in a criminal or civil case, to be signed; and that it would be, beyond doubt, good without it.' 2 Texas, 203." The law now requires the verdict to be signed by the foreman. Code Crim. Proc., art. 744. In the case of Gerard v. State, 10 Texas Cr. App., 690, the judgment contained the following recital: "Whereupon came a jury of twelve good and lawful men, to wit, and proceeds to set out the names of eleven jurors, and but eleven." The case was reversed on other grounds, but the decision in Rich v. State, supra, was in substance affirmed. There it is given as the individual opinion of Judge Winkler that: "When the record recites the fact that a jury of twelve good and lawful men tried the case, this court would be warranted in indulging the presumption, when but eleven names are set out, that the clerk had omitted a name in making up the transcript, rather than that the judge who presided at the trial had permitted a trial to proceed to verdict with but eleven jurors, and that the recital that the jury was composed of the proper number was false." The case of Stell v. State, 14 Texas Cr. App., 59, was a case tried in the County Court. There, in respect to the facts of that case, the following statement was made: "In the case under consideration the judgment shows, and other portions of the record also make it manifest, that a jury of only five men was impaneled and tried the case, and there is nothing indicating a waiver or consent on part of defendant; on the contrary, it is shown in his motion for a new trial that he did not consent, because he makes it one of the grounds of his motion." In the case of Jester v. State, 26 Texas Cr. App., 369, it appeared that appellant was charged and convicted of the crime of burglary, which was a felony, before a jury composed of six men. In this case the following statement is made by the court: "It appears from the record that the defendant was tried by a jury of six men. Such trial was not in accordance with law, and the conviction must be set aside."

We think the record in the case before us is in some respects different from any of the cases above referred to, and that applying the principles of these cases to the case at bar, a reversal is not demanded by any fair or reasonable construction of our statutes. In this case the judgment recites that twelve men composed the jury, and the names of these men are set out in full. This leaves no doubt of the number of men composing the jury and who they were, and nothing on this point is left to inference or presumption. The only

difficulty arises from the fact that the verdict as copied into the record purports to be signed as foreman by one who was not in fact a member of the jury. It is further to be noticed that this matter was not adverted to or noticed in the motion for a new trial; was not questioned or raised by bill of exceptions, affidavit or otherwise. In the absence of some proof, where the judgment recites that the jury was composed of twelve men, and names the twelve men, we think that we should hold that appellant was tried by a constitutional jury, and should and must presume that in copying the verdict the name of the foreman was improperly stated. It would seem to be inconceivable that the District Court would have permitted the verdict to have been signed by someone not a member of the jury, and it is quite as unlikely that appellant and his counsel would have stood by and have suffered in silence a verdict to have been returned signed by a person as foreman who in fact was not on the jury. Such an error in the record or misrecital as this appears to be, could the more easily have been accounted for than the fact that all parties stood by in silence and without protest or objection assented to or permitted the verdict to be signed as foreman by someone other than the triers of the case. Here the record affirmatively shows that appellant was tried by a jury of twelve men. While not essential that it should be done, the names of these men are given. The only irregularity or matter of possible objection is that the verdict appears to be signed by Eckhart, whose name does not appear as one of the jurymen in the case. While this court, and courts generally, have adopted a quite rigid rule in respect to matters of procedure of this sort, we can not feel that we ought in any case assume or presume in the face of the record, which recites the constitutional number of jurymen, by the mere fact that the verdict purports to be signed by another person, that appellant was tried either by more or less than the number of jurors provided by law and required by our Constitution. So to do would place the shadow above substance and follow a bald literalism beyond the confines of absurdity.

2. It is urged that the court erred in admitting in evidence testimony of Henry Haby as having seen in possession of appellant nine other goats than those with the theft of which he is charged. In the bill of exceptions evidencing the action of the court in this matter the court states that this evidence when first offered was not objected to by appellant and was admitted without objection, and that the only point then made was that the State should be required to elect and state for which of the five goats it would prosecute. In connection with this matter it is urged that the court erred in not giving appellant's special instruction touching this matter. This instruction was to this effect: "That all evidence introduced by the State as to the taking of other goats other than the five head charged in the indictment, that is, the five head found at Henry Haby's, if you believe that any were found there, is hereby withdrawn from

your consideration and you will not consider any evidence in regard to the finding of freshly marked goats at the pen of defendant by Henry Haby for any purpose." This instruction should not have been ·given in view of the claim of appellant that he had taken the five goats under mistake of fact. It was proper in view of the mark of Haby—H on the nose or jaw—to show the possession of other animals by appellant belonging to Haby, which had likewise been marked and branded by appellant with a view of affecting the good faith and truthfulness of his claim.· As presented, there was no error in the action of the court in either of these matters. If the charge had limited the consideration of this evidence as affecting the issue of intent it should and doubtless would have been given.

3. Again, it is urged that the court erred in overruling the application for continuance made by appellant. This application was made on account of the absence of Davis and Reno, Reno being alleged to reside in Bastrop County, and Davis in McCulloch County, in this State. By Davis it was expected to be proved that the witness Haby had stated in his presence, in substance, that he might have been mistaken as to the goats, and that they may have belonged to appellant. By Reno it was expected to be proven that one Cates, from whom· Haby had bought the goats in question, had other goats in the neighborhood, which he sold to an uncle of appellant, and that he had counted these goats about the time Cates left Bandera County, and that there were thirty-three which he had not sold at that time to anyone. The court explains in his explanation of the bill of exceptions that this was the third application for continuance. We think the court did not err in overruling the application. In the first place, the testimony of Davis was a mere matter of impeachment, and beside the same fact had been proven by one William Felts, introduced on the trial by appellant. The substance of the testimony of Reno was proven by more than one witness—not indeed that that was the precise number of goats belonging to Cates unsold, but there were several and at least more than five in the remnant so left by him. This testimony also was merely cumulative, and in view of the fact that it was the third application, it was not of such importance as would have required the court to have continued the case.

4. Again, counsel complain that the court erred in not giving a charge on voluntary return of stolen property. Such a charge was not demanded. It is shown by all the testimony that no offer of return was made until appellant had been found in possession of the property and charged with the theft of same. It is well settled in this State, to constitute the voluntary return of stolen property it must be willingly restored to the owner within a reasonable time, the motive inducing its return being immaterial. A return, however, made after the accused is found in possession of the stolen property, or taken in the act, or after prosecution has been instituted,

is not a voluntary return.  Stepp v. State, 31 Texas Cr. App., 349; Grant v. State, 2 Texas Cr. App., 163; Elkins v. State, 35 Texas Cr. App., 206; Stephenson v. State, 4 Texas Cr. App., 591.

5.  Again, it is claimed that the evidence is insufficient to sustain the verdict.  This was essentially a fact case.  Among other witnesses, J. N. Word, deputy sheriff, testified that Henry Haby said to him in appellant's presence that he (appellant) had stolen his goats, but has given them up, and further said, "If we will be light on him he won't bother our stuff any more."  To this accusation appellant made no reply, nor did he claim that when he took the goats he thought they were part of the J. Cates remnant.  Again, L. J. Haby testified as follows: "When Bud Petty and Henry came back with the goats and met me and Word, Henry Haby said, 'Bud has admitted that he stole my goats, but he has given them up, and says if we will be easy on him he will not bother any of our stuff any more.'  I said, 'Hold up there, Henry,' and said to him, 'Bud, whose goats are those?'  Bud said, 'They are Henry's.'  I said, 'Whose brand is that on them?'  'It is mine.'  Bud said, 'Who put it on them?'  'I did.'  Bud did not claim that he took them by mistake, thinking that they were a part of the J. Cates remnant."  This testimony and much additional evidence made out a clear case of theft.  Appellant's claim of mistake of fact is supported by some testimony.  This made an issue for the jury.  On proper charge they have resolved it against appellant.  We could not and ought not to interfere.

Finding no error in the judgment of the court below, it is hereby in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge.—I can not concur and will state my reasons more fully later.

THOMAS B. LOVE, Special Judge, concurs in overruling motion for rehearing.

[Rehearing denied June 15, 1910.—Reporter.]

DAVIDSON, Presiding Judge (dissenting).—When the opinion was rendered I noted the fact of my nonconcurrence.  The majority opinion correctly states the recitals of the judgment of the lower court in regard to the names and number of the jurors who tried the case.  An inspection of the judgment shows that there were thirteen jurors who tried the accused.  This being true, the verdict is necessarily illegal.  The Constitution limits the number of jurors to twelve in all felony trials.  Article 5, section 13.  To meet this trouble my brethren say: "The verdict as copied into the record purports to be signed as foreman by one who was not in fact a member of the jury."  I can not concur in this finding, nor do I under-

stand how this court can know that Eckhart, the signer of the ver-
dict as foreman, did not in fact sit on the jury. The court adjudi-
cated the fact that he did, received the verdict so signed, and had
it entered in the judgment and recorded in the minutes of the court
for the term. There are no facts in the record in regard to the
matter except as stated in the face of the judgment. With the judg-
ment in this condition we are not authorized to impeach its verity.
All presumptions are to be indulged in aid and support of the judg-
ment, and that it correctly recites the facts as therein narrated. Just
why the foreman should be selected as not having sat on the jury
in preference to some other or all other jurors is not apparent.
With equal plausibility any or all of the other jurors could have
been held not to have sat in the trial. There is no reason that obtains
with reference to one juror in the case which would not equally
apply to any other juror, unless perhaps the reason would be stronger
why the foreman should not be singled out as having sat there by
mistake for the reason that he signs the verdict as such foreman, is
the most conspicuous juror, and thus speaks for the jury. There
is no contention made here that the judgment is incorrect. We
are not, therefore, justified in presuming that the judgment is un-
true. All presumptions, as before stated, must be indulged in aid
and support of the correctness of the judgment, and that it truthfully
recites the facts, otherwise there would be worse than legal confusion.
Brown v. State, 32 Texas Crim. Rep., 119; Gordon v. State, 29
Texas Crim. App., 410; Escareno v. State, 16 Texas Crim. App.,
85; Gorman v. State, 22 Texas, 592; Chandler v. State, 2 Texas,
304. For further collation of authorities see White's Annotated
Code of Criminal Procedure, sections 1056, 1053, and 1258.

A party attacking a judgment must overcome such presumptions.
In this case there was and is no such attack. Appellant relies upon
its verity and the State does not deny its correctness. We can not
assume or presume that there was a mistake in reciting the facts.
The presumption is that there was no mistake. Under this view of
the law the presumption is that there were thirteen jurors sitting
on the trial of the case, and this being true, the conviction can not
be sustained. Article 1, section 14, of our State Constitution, pro-
vides that "the right of trial by jury shall remain inviolate." This
provision of the Constitution has been carried into the Code of
Criminal Procedure as article 10. For collation of authorities con-
struing this article of the Criminal Procedure see White's Annotated
Code of Criminal Procedure under said article 10. Article 21 of
the Code of Criminal Procedure provides: "No person shall be
convicted of a felony except upon the verdict of a jury duly ren-
dered and recorded." See also articles 743 to 762. It is further
provided by statute that a defendant in a ciminal case may waive

any right except trial by jury. White's Annotated Code of Criminal Procedure, article 22, and notes thereunder for cases.

The question may be asked, what is a jury in a felony case, and what number of jurors does it take to constitute such jury? The Constitution provides, in article 5, section 13, that a jury in a felony case shall consist of twelve jurors. This provision is carried forward in article 632 of the Code of Criminal Procedure. Under both Constitution and the Code of Criminal Procedure a petit jury must be constituted of exactly twelve men, no more and no less. See White's Annotated Code of Criminal Procedure, section 694, for cases. Art. 5, sec. 13, Texas Constitution. Also Rich v. State, 1 Texas Crim. App., 206; Huebner v. State, 3 Texas Crim. App., 458; Marks v. State, 10 Texas Crim. App., 334; Jester v. State, 26 Texas Crim. App., 369.

From these cases it appeared that the constitutional number of jurors did not sit, and the judgments were held vicious. Analogous to this question is that with reference to the necessary number of grand jurors to constitute the grand jury a legal body to prefer indictments. An inspection of article 5, section 13, discloses the fact that the language is identical as to number of jurors which constitute grand and petit juries. Each shall consist of twelve jurors, no more or no less. The difference in regard to the two bodies is found in the fact that nine members of a grand jury may return an indictment, while in petit juries it takes the unanimous vote of the twelve to return a verdict. Indictments returned by grand juries organized with more or less than twelve jurors have invariably been held invalid when the validity of such indictment has been questioned before the courts. Writs of habeas corpus have even discharged parties under such circumstances from the penitentiary when convicted under indictments presented by a grand jury composed of more or less than twelve. Ex parte Reynolds, 35 Texas Crim. Rep., 437; Ogle v. State, 43 Texas Crim. Rep., 219, 63 S. W., 1012; Ex parte Ogle, 61 S. W. Rep., 122. The parties in these cases were discharged by reason of the fact that the indictment, having been returned by a grand jury composed of more or less, as the facts would show, was rendered vicious. Ogle v. State, 43 Texas Crim. Rep., 219; York v. State, 17 Texas Crim. App., 441; McNeese v. State, 19 Texas Crim. App., 48; Smith v. State, 19 Texas Crim. App., 95; Ex parte Swain, 19 Texas Crim. App., 323; Rainey v. State, 19 Texas Crim. App., 479; Wells v. State, 21 Texas Crim. App., 594; Kennedy v. State, 22 Texas Crim. App., 693; Mays v. State, 36 Texas Crim. Rep., 437; Ex parte Ogle, 61 S. W. Rep., 122; Ex parte Reynolds, 35 Texas Crim. Rep., 437; Ogle v. State, 43 Texas Crim. Rep., 219, 63 S. W. Rep., 1012. For further collation of authorities see Ogle v. State, 43 Texas Crim. Rep., 219.

There is no difference as to the requisite number of jurors which it takes to constitute a legal jury, whether it be grand or petit. The

Constitution requires twelve in each or both instances. The difference and the only difference then being that, as before stated, a grand jury, after having been organized with the requisite twelve, can work with a quorum of nine, whereas the petit jury must be constituted of the full number, else they can not return a verdict.

Inasmuch as the record in this case solemnly recites that thirteen jurors sat in the case, giving their names, I am of opinion that this court is not authorized to presume that there were less than thirteen, and that the judgment recites by mistake the name of the foreman of the jury. The jury was in front of the court, he organized, impaneled and charged that body, received their verdict, and solemnly adjudicated the fact that the judgment correctly recites the names of the jurors who tried the case, and further, he approved the minutes with the record in this condition. This court, therefore, as I understand the law, is not justified in saying in the face of this solemn judgment, unattacked in any way, that the trial court made a mistake, and that this solemn adjudication is not correct. If this judgment is wrong, its recitals or mistakes are made through oversight, then I would ask what judgment have we in the record and upon what adjudication of the trial court are we called on to base our findings? If the judgment is incorrect and does not recite the truth, and its solemn recitals are to be set aside, then it would follow that we have no judgment of the trial court, but we supply for that court a judgment he did not render. In thus vitiating the decree of the trial court, there would be nothing upon which to predicate an affirmance, and the judgment should in any event be reversed and the cause remanded.

These reasons have been hurriedly given, but I think are manifestly correct. I, therefore, respectfully enter my dissent.