## Burl Stone v. The State.

### No.. 6246. Decided June 1, 1921.

**1.—Theft of Hog—Evidence—Other Offenses—Good Faith.**

Where, upon trial of theft of a hog, defendant claimed innocent connection and denied a fraudulent intent, there was no error in permitting the State to introduce testimony of the fact of possession by defendant of the alleged stolen property, and also his possession at the same time of other stolen property, that is, the hog of another party, as rebutting his claim of possession in good faith, of the alleged stolen hog. Following Hester v. State, 15 Texas Crim. App., 567, and other cases.

**2.—Same—Other Transactions—Evidence.**

Upon trial of theft of a hog, there was no error in permitting the State to prove by a defense witness what was said relative to the two hogs mentioned, that is, the one described in the indictment and another hog belonging to another party taken at the same time, and that the owners came and took them from the possession of the defendant.

**3.—Same—Evidence—Acts and Declarations of Defendant—Harmless Error.**

Where, upon trial of theft of a hog, the defendant himself testified that another party got a hog which was in the same pen with the one alleged to have been stolen, there was no reversible error in permitting a witness to testify that this party told him of the fact that he got said pig from defendant, this in no event would be more than harmless error.

**4.—Same—Evidence—Other Transactions—Good Faith.**

Upon trial of theft of a hog, where the evidence showed that the hog alleged in the indictment and another, not described therein, were brought to defendant's premises at the same time and under a claim of right in good faith, and that he let the two owners of said hogs have the same, still claiming that they were his, there was no reversible error in State's counsel's remarks to defense's witness that defendant just voluntarily gave one of the pigs to one man and the other pig to the other owner.

**5.—Same—Rule Stated—Evidence—Other Offenses—Intent.**

Where, upon trial of theft of a hog, the evidence developed that with the hog described in the indictment was taken another, or another was taken by the defendant belonging to a different party, there was no error in developing the *res gestae* of the transaction, showing the possession and taking of the alleged stolen hog as well as the fact with reference to the taking of the other. This would also be material in rebutting the claim of innocent intent. Following Kelly v. State, 18 Texas Crim. App., 262, and other cases.

**6.—Same—Rule Stated—Evidence—Other Offenses.**

Evidence of other thefts are properly admissible to develop the transaction, to identify, under certain circumstances, the animal in question, to show fraudulent intent, and if the offense be so closely connected that proof of one necessarily discloses the other, there is no reversible error. Following Welhausen v. State, 30 Texas Crim. App. 623, and other cases.

**7.—Same—Requested Charges—Other Offenses.**

Where evidence as to other offenses was correctly admitted, to develop the *res gestae*, in rebuttal, etc., there was no error in refusing the requested charges not to consider this testimony.

8.—Same—Evidence—Bill of Exceptions—Practice in Trial Court.

One may not allow an objectionable question to be asked and speculate as to its answer, or wait therefor before making his objection; however, there was no vice of the answer made to the questions as to certain hog pens built and owned by the defendant.

Appeal from the District Court of Polk. Tried below before the Honorable J. L. Manry.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Brazil*, and *Campbell & Murphy*, for appellant.—On question of other offenses, Johnson v. State, 60 S. W. Rep., 667; Buck v. State, 83 id., 390; Kelly v. State, 18 Texas Crim. App., 263.

. *R. H. Hamilton*, Assistant Attorney General, for the State.

On question of other offenses: Strang v. State, 32 Texas Crim. Rep., 219.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Polk County of the offense of theft of a hog, and his punishment fixed at confinement in the penitentiary for two years.

Appellant was charged with theft of one hog alleged to be the property of Sam Brown. Witness Owens testified that prior to said alleged theft he sold to appellant, "a claim of hogs on Piney—across Piney rather," and that this was in March or April of 1919, which bunch of hogs consisted of some thirty odd head, among which were some black ones and some unmarked pigs. The hog of Brown alleged to have been stolen by appellant in the instant case, was a black unmarked pig about five or six months old. Mr. Brown testified that on April 14, 1919, he was in the woods and heard dogs baying and went in that direction and saw appellant catch his pig and carry him away in a sack; also that some days afterwards he located said pig in a pen near a spring about 250 or 300 yards from appellant's house. This pen was out of sight of the road and also out of sight of the spring. There were two pigs in said pen at the time. Brown was on horseback and rode up to said pen, and a little later met Mr. Maxey and both rode back to the pen, and Maxey saw said two pigs. He corroborated Brown in this testimony and also in the description of said pigs. Brown said that he located his pig on Sunday, and on the next day about sunrise he went back and found that both pigs had been turned out of the pen mentioned. That he met appellant who told him in rather a tart conversation detailed, that he turned the pig out because he saw so many horse tracks around the pen and knew somebody was going to claim it, and concluded that he had better turn it out. Brown also said that in this conversation appellant said he claimed

the pig as his but that if Brown claimed it he would let him have it. The testimony showed that appellant had a number of hog pens, amounting to about four, at different places in the woods.

Appellant's wife testified that on Tuesday after the day fixed by Mr. Brown for the loss of his hog, appellant went hog hunting and came home with two black pigs in a wallet, which pigs were placed by him in the pen near the spring. All the testimony seems to indicate that these were the only pigs in said pen at or about the time of this transaction. Appellant testified, denying his guilt of taking Brown's hog, at the time Brown testified to seeing him so take same, and said that he got the pig which he had in the pen and which Mr. Brown claimed, over on Piney creek about three and one-half miles from his place. and that it was a part of the Arrington bunch. He said that he allowed Brown to take the pig, but that it was his. He also said, over the objection of his counsel, that Mr. Bunk Jones got the other pig from said pen at the same time Brown got the one claimed by him, the theft of which he is here charged. He testified that Jones did not get said pig of his, appellant's, free will, but that he gave his consent and Jones took it.

In his bill of exceptions No. 6 appellant presents his objection to the witness Maxey being permitted to state that he knew the shoat which was in appellant's pen with the one claimed by Brown, and that it was Bunk Jones' shoat. Appellant admitted that this shoat was claimed and carried away by Mr. Jones at the time Mr. Brown got the one claimed by him. Appellant's wife had testified that the two shoats were brought to their place by appellant at the same time. The apparent defense in the case was that of an innocent connection by appellant with Brown's pig, a denial of any fraudulent intent, and a belief that the pig was one bought by him from Owens and included in what he called the Arrington bunch. In such case the fact of possession by appellant of the alleged stolen property, and also his possession at the same time of other stolen property, would be admissible; the latter as rebutting his claim of possession in good faith of the alleged stolen property, and for various other reasons enumerated in our decisions. Hester v. State, 15 Texas Crim. App.; 567; Harwell v. State, 22 Texas Crim. App., 251; Davidson v. State, 12 Texas Crim. App., 214; Denton v. State, 42 Texas Crim. Rep., 427; Petty v. State, 59 Texas Crim. Rep., 586; Overstreet v. State, 68 Texas Crim. Rep., 238, 150 S. W. Rep., 899.

What we have just said applies to appellant's objection to the State being allowed to prove by the defense witness Sickman what was said relative to the two hogs mentioned,—that one man took one and the other man took the other, said evidence tending to show appellant in possession of Jones' hog, as well as that of Brown.

Appellant's bill of exceptions No. 8 shows that the State asked said Sickman relative to a conversation had by him with appellant, viz:

"He told you that Mr. Bunk Jones got the other one?," to which witness replied, "Yes sir, Mr. Bunk Jones told me." Appellant objected, and the court overruled the objection. The question had been answered without objection. Looking to see if the whole matter in the record aids appellant's bill, we observe that said witness, without further question apparently, said, "Yes sir, he told me that Mr. Bunk Jones got the other hog—Mr. Bunk Jones said he got the other hog. Yes sir, this man told me that, Burl Stone himself." We do not think this shows any error. In view of the fact that appellant himself testified that Bunk Jones did in fact get the other hog from him, we are of opinion that if witness Sickman had testified that Jones alone told him of the fact that he got said pig from appellant,—this would in no event be more than harmless error.

Nor do we think error shown by appellant's bills of exception Nos. 9, 11 and 12 complaining respectively that State's counsel said to defense witness Sickman, He just voluntarily gave one of the pigs to Mr. Brown and one to Mr. Jones,?" and that appellant on cross-examination was asked, "Mr. Maxey was there and identified it (the shoat found in the pen with Brown's) as Bunk Jones' shoat?," which was answered by appellant, "Yes sir;" and also to the State asking appellant relative to said two hogs, saying, "One went East and one went West," to which appellant replied, "No, they both went East." No other conclusion could be arrived at from the testimony of Mrs. Stone, Mr. Sickman and appellant himself, taken together, but that both pigs were brought to appellant's premises at the same time and under a claim of right and good faith and that he let Brown and Jones have both of said pigs, still claiming them as his.

Most of the authorities cited by appellant as holding the evidence complained of in said bills of exception, to be objectionable, are cited in 16 Corpus Juris, Sec. 1132, as supporting the general rule that on the trial of one for a particular crime, evidence showing or tending to show a wholly independent crime, even though of the same character, is inadmissible. This authority is referred to by appellant. The succeeding section in said work states that the exceptions to the rule mentioned are founded on as much wisdom and justice as the rule itself, and numerous authorities are then referred to and cited as supporting the proposition that in cases where evidence of other offenses affects knowledge, intent, identity, motive. system, etc., same is admissible. We approve the rule as stated in McIver v. State, 60 S. W. Rep., 50, also cited by appellant, which is as follows: "The rule is tersely expressed in Welhausen v. State, 30 Tex. App., 623, 18 S. W., 300: 'Evidence of other thefts are properly admissible to develop the transaction, to identify, under certain circumstances, the animal in question, to show fraudulent intent; but, to serve any purpose, the proof must show that the other animals or property were taken about the same time and place, or so near thereto as to constitute the same transaction. If the offenses be so closely connected that proof of one neces-

sarily discloses the other, the State will have the right to disclose both to the extent of their necessary connection; but evidence of distinct separate crimes not so connected, or, if connected, which do not tend to serve one of the purposes above mentioned, is not competent evidence." This applies forcibly to the facts in the instant case: Jones found his pig in appellant's possession at the same time Brown found his in the same place; both took their respective pigs away at the same time; Mrs. Stone, appellant's wife, says that he brought both pigs to his place in the same wallet at the same time; Sickman says on the same day he saw appellant with what appeared to be two pigs in his wallet. It would certainly be material as developing the *res gestae* of the transaction, the possession and taking of the Brown hog, to show the facts as to the other; and it would also appear that same would be material as rebutting the claim of innocent intent as to one and the claim that it was gotten by appellant from the Arrington bunch on Piney creek,—to show that the other of said hogs in fact belonged to Bunk Jones, who identified, claimed and carried it away. There is nothing in Kelly v. State, 18 Texas Crim. App., 262, indicating a contrary opinion to what we have just said, but it expressly refers with approval to the rule that evidence of extraneous offenses is admissible when intent is an issue, when used to establish identity in developing the *res gestate,* or when a chain of circumstances is relied on to prove guilt.

It follows as a necessary corollary that we do not think it error for the trial court to refuse appellant's requested charges Nos. 1 and 3 in which he sought to have the jury told that they could not consider the evidence substantially referred to and discussed in the foregoing.

Appellant's bills of exception Nos. 3 and 10 relate to questions and answers as to certain hog pens built and owned by appellant. Neither bill shows any objection made to the question before the answer was given, and neither shows any motion to exclude or effort to be relieved from the effect of the answer. We are of opinion that one may not allow an objectionable question to be asked and speculate as to its answer, or wait therefor before making his objection. However, we are unable to see the vice of the answer made to either of said questions. Appellant himself testified apparently without any objection that he had shipped fifty-five head of hogs into the country and had bought more than one hundred afterward, and that he had hogs located on Salt creek where he had a pen, and that he built a pen for the hogs he got from Arrington, and that he had to have pens for his hogs. This would seem to be a fair and legitimate conclusion. Hog pens are not contraband or suspicious property ordinarily, nor would the fact that one having hogs on various ranges had built pens on such several ranges seem to be a circumstance against him, any more than the fact of the possession of a shot gun, or of an axe would seem to raise presumptions against their owner of an intent to commit murder. Rela-

tive to the question asked defense witness Jernigan as to how long a man should be in the country before he acquired a number of hog pens, witness answered he did not own them. As this matter comes before us we are unable to see any error in either of said bills of exception.

This disposes of appellant's contentions, and finding no reversible error in the record the judgment will be affirmed.

*Affirmed.*