## A. SANDOLOSKI V. THE STATE.

### No. 1392. Decided November 29, 1911.

### Rehearing denied January 24, 1912.

**1.—Local Option—Continuance—Cumulative Testimony.**

Where the application for continuance was not in compliance with the law, and the absent testimony cumulative, it was correctly overruled.

**2.—Same—Information—Complaint—Variance—Statutes Construed.**

Where the information stated that it was founded upon testimony taken in behalf of the State under oath, the complaint being in the usual form and sworn to, there was no variance. It is not necessary to allege that the information is founded on a complaint. Articles 430 and 431, Code Criminal Procedure.

**3.—Same—Evidence—Other Transactions.**

Where the defendant told the witness that he was shipping Hiawatha to other parties, there was no error in permitting the witness to testify that defendant had shipped to other parties.

**4.—Same—Evidence—Other Offenses.**

Where the testimony that the witness had been convicted for selling the same stuff was promptly excluded by the court, there was no error.

**5.—Same—Charge of Court—Intoxicating Liquors—Definition—Hiawatha.**

Where the court properly instructed on the definition of intoxicating liquors, there was no error in refusing special charges which required unconsciousness or delirium as a result of drinking same.

**6.—Same—Charge of Court.**

Upon trial of a violation of the local option law, there was no error in refusing a special charge not applicable to the evidence.

**7.—Same—Charge of Court—Punishment—Statutes Construed.**

Where the prosecution for the violation of the local option law was had under the misdemeanor statute, of which defendant was convicted, the defendant could not complain because an election had been held resulting in local option after the felony statute became a law, as the defendant was tried under the law in force when the offense was committed. Article 407, Penal Code construed.

**8.—Same—Other Offenses—Misconduct of Jury.**

Where, upon trial of a violation of the local option law, a State's witness testified that he had been convicted for selling the same kind of liquor, which testimony was promptly excluded, and it developed on motion for new trial that the jury had not discussed this matter, or had been influenced in such a manner as to vitiate their verdict, and that it was questionable whether it was discussed at all, there was no error.

**9.—Same—Statement of Facts—Motion for New Trial—Stating Facts.**

A statement of facts of testimony taken on motion for new trial must be filed during term time of the trial court, and can not be filed thereafter. Following Probest v. State, 60 Texas Crim. Rep., 608. See opinion on rehearing correctly stating facts in record.

Appeal from the District Court of Marion. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

Vol. LXV Crim.—3.

The opinion states the case.

*W. T. Armistead* and *R. R. Taylor,* for appellant.—On insufficiency of the information: Howerr v. State, 4 Texas Crim. App., 75; Williamson v. State, 5 id., 485; Hawthorn v. State, 6 id., 562.

On question of felony Act being in force at time of prosecution: Greer v. State, 22 Texas, 588; Chambers v. State, 25 id., 307; Chiles v. State, 1 Texas Crim. App., 27.

On question of intoxicating liquor: Dallas Brewery v. Homesborough, 112 S. W. Rep., 122; Petteway v. State, 36 Texas Crim. Rep., 97.

On question of misconduct of jury: Barnes v. State, 43 Texas Crim. Rep., 355; Dancy v. State, 41 id., 294.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was prosecuted for violating the local option law, adjudged guilty, and his punishment assessed at a fine of $25 and twenty days imprisonment in the county jail.

The facts show that appellant sold to John T. Deadweiler a drink called "Hiawatha." It appears that appellant first sold two casks of Hiawatha to Louis Restella, representing that it was nonintoxicating. After investigation Mr. Restella declined to handle same, he being of the opinion that it would produce intoxication. Appellant was the agent and representative of the Houston Ice & Brewing Company, whom he says manufacture both beer and this drink called Hiawatha. He admits that he first sold several cases of Hiawatha to Restella and delivered it to him in Marion County; that when Restella refused to handle and sell it, he made arrangements with Deadweiler to handle the drink and sell it, and instructed a drayman to go to Restella's and get the casks and carry them to Deadweiler. That Deadweiler paid him $10 a cask for those delivered to him. That outside of this sale and delivery, it was his usual custom to take orders for Hiawatha and have it shipped from Houston or Marshall to the purchaser. Appellant at this time was in the saloon business at Marshall, and when he would order a mixed car of beer and Hiawatha, the Hiawatha would be unloaded at Jefferson where prohibition was in force, and the beer carried on to Marshall where he was engaged in the saloon business, saying that he had no need for Hiawatha at Marshall, as the people there would not buy it. There is a sharp conflict in the testimony as to whether Hiawatha would produce intoxication. The witnesses for the State testify that it would, while the witnesses for the defendant are equally positive that it will not, when drank in quantities that can usually be drunk. The question of a sale is proven beyond question; in fact, defendant admits making the sale and delivery of two casks at ten dollars per cask to Deadweiler in Marion County, the only question being, was the liquor sold an intoxicating liquor?

1. Appellant's first ground is that the court erred in not granting his motion for a continuance. The application fails to state that witnesses were not absent "by the procurement and consent of defendant" and is, therefore, insufficient in law. The application further fails to state whether it is the first or second application, but inasmuch as the case was filed April 30, 1908, and this trial took place on April 26, 1911, this court will presume that it is at least a second application, and as the testimony would have been cumulative of that testified to by a number of other witnesses, had the application been in compliance with the statute, the court would not have erred in overruling it.

2. There was no error in refusing to quash the information and complaint. The date of the alleged sale was anterior to the filing of the information and complaint, and the fact that the complaint states: "R. W. Walden, who being duly sworn, says on oath that he has good reason to believe and does believe," etc., and the information alleges that "Horace Vaughn, district attorney of the Fifth Judicial District now here in the District Court of Marion County, Texas, does present this information founded upon testimony taken in behalf of the State under oath," etc., does not present such a variance as vitiates the complaint or information. The complaint is sworn to by Mr. Walden as required by law, and the information is in full compliance with art. 466 of the Code of Criminal Procedure, and has in it all that is required by that article. If a complaint has been in fact made and filed, it is not necessary that the information shall so state. Johnson v. State, 17 Texas Crim. App., 230.

3. In bill of exceptions No. 2 appellant complains that the court erred in permitting the witness Deadweiler to answer that appellant had shipped Hiawatha to others in Jefferson. Inasmuch as the witness also testified that appellant told him he was shipping to these other parties, and if at any time he got out, he could get it from the persons named, and pay him for it, it was not error to admit the testimony.

4. In his third bill appellant complains that while the witness Deadweiler was on the witness stand, he was asked if he had not been convicted for selling the same stuff, to which question it is alleged the witness answered, "Yes," while an objection was being made by defendant's attorney. The bill further shows that the court "on his own motion promptly excluded the question and answer and instructed the jury to wholly disregard such question and answer and to give them no consideration whatever, but to absolutely ignore them and pay no attention to them." The bill presents no error.

5. The court did not err in refusing to give appellant's special charges Nos. 1 and 2, said charges defining intoxicating liquor improperly, requiring the liquor to be such when drank in "such quantities as the human stomach would practically hold produce such intoxication as would result in unconsciousness or delirium." Delirium hardly ever occurs except in those cases where intoxicants are drank to excess for a long continued period of time, and the charges re-

quested are not the law. The court gave a correct definition, instructing the jury: "Intoxicating liquor, as used in this charge, is a liquor intended for use as a beverage or capable of being so used which contains alcohol, either obtained by fermentation or by the additional process of distillation, in such a proportion that it will produce intoxication when taken in such quantities as may practically be drunk."

6. Neither did the court err in failing to give special charge No. 3 requested. It was not applicable to the evidence, in that the evidence showed that appellant sold Deadweiler two casks of Hiawatha already in Jefferson, and delivered same to him, and there was no question of taking orders and shipping from other points as to these two casks.

7. Neither did the court err in refusing to give the following special charge requested: "You will find the defendant not guilty because the law changing the penalty to a felony, and an election having been held in Precinct No. 3 of Marion County, Texas, since the felony statute went into effect, repealed the misdemeanor statute." The statute making a sale of intoxicating liquor a felony became a law July 24, 1909. The complaint and information in this case were filed in April, 1908, and alleged the sale to have taken place in March, 1908. Article 407 of the Penal Code provides that the repeal of prohibition shall not exempt from punishment any person who may have offended against the provisions of the law while it was in force, and art. 5 of the Penal Code provides that "in every case the offender shall be tried under the law in force when the offense was committed, and if convicted, punished under that law," providing that if penalty be ameliorated, the defendant shall be given the benefit of such lesser penalty. We do not suppose that anyone would insist that a term in the penitentiary would be an "amelioration of the penalty" assessed in this case.

8. The only serious question in the case is that raised by the last ground in the motion that "the jury was improperly influenced by the testimony of the witness Deadweiler that he had been convicted for selling the same kind of liquor. That this testimony was considered by the jury in arriving at their verdict, and was discussed by the jury while deliberating on the case." Appellant does swear to the motion, and states that he is unable to secure affidavits to these facts. However, on hearing the motion for a new trial, the court permitted the jurors to be sworn. Paul Fernard testified that it was discussed, and he heard it mentioned by juryman Stutts. That he stated it was a similar case to the Deadweiler case, and witness further stated there was no argument about it, and such conversation or statement had no influence on him. Mr. Stutts swears positively he made no such statement, and he heard no one else make such statement. One or two other jurymen say that the fact that Deadweiler had been selling this Hiawatha was mentioned in the jury room, while others say that Deadweiler's testimony was discussed, he being a witness in this case. Of course, it was not proper to refer to the fact that Deadweiler had been convicted for selling Hiawatha, if it was done, but as the question of

whether it was mentioned or not is a question of fact, and the court hearing the motion finds it was not done in overruling the motion, and the further fact that the only juryman named as the man who used the language positively denies doing so, we do not feel authorized to disturb the verdict. Jurymen should not discuss any fact not in evidence, and if the evidence was clear and undisputed that such had been done, a different question would be presented; but inasmuch as the question of fact is a disputed one, and even those who say the matter was mentioned, say it did not influence them in arriving at a verdict, not such a case is presented as should work a reversal.

As hereinbefore stated, there was a sharp conflict in the testimony, but if the jury believed the State witnesses, a case was made.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### January 24, 1912.

HARPER,, JUDGE.—At a former day of this term this case was affirmed, and appellant has filed a motion for rehearing in which he earnestly insists that "the Honorable Court of Criminal Appeals erred in its opinion in its statement of the case or findings of fact. The court finds that 'appellant at this time was in the saloon business at Marshall.' This finding is outside the record. The typewriter of appellant's brief made the mistake of inserting 'saloon man' for 'salesman' or 'drummer,' and the word saloon man was scratched out by counsel and salesman written in its place. Again, as to 'when he would order a mixed car of beer and Hiawatha,' etc. This is error because the carload lot as ordered were shipped from Houston to Marshall, and if beer and Hiawatha were mixed in the car, the beer was delivered at Marshall, and there distributed to purchasers on their orders, where intoxicants were sold, and then the Hiawatha was carried on by the railroad company to Jefferson, dry territory. If any beer was brought to Jefferson, it was brought by the railroad company through mistake and was never seen or handled by the appellant. This was material to show that appellant never intentionally or knowingly shipped beer or intoxicants to purchasers in Jefferson. The court further finds, 'There is a sharp conflict in the testimony as to whether Hiawatha would produce intoxication.' We fail to find any such conflict, and especially do we so fail as to Hiawatha used by Deadweiler or Restella."

Appellant has not apparently read the record in the case, and if any mistakes are in the statement of facts as agreed to, we can not take cognizance of them, but must take the record as it is filed in this court. As to a conflict in the testimony, if we take the testimony of Restella and Deadweiler alone perhaps there would not be, for their testimony would make it an intoxicating liquor. Louis Restella says: "As to whether I ever have seen this Hiawatha, I seen what I had down there

in the pool room. I got three casks of it from the defendant A. Sandeloski. I got it to sell it. It was put up just like bottle beer. It was put up in pint bottles, and the bottles looked like beer bottles. There were no labels on what I got. The defendant sold it at $10 a cask; I think it was $10. As to what I did with the stuff I got from the defendant, I turned them back. I don't know whether or not he sold it to Mr. Deadweiler; wouldn't swear about that. I don't know whether the defendant ever told me or not that he was going to let Deadweiler have it. I just told him I didn't want to sell it. He said he was going to send mine back; I don't know whether Deadweiler got it or not. I only got three casks of the stuff from the defendant. I think I used 4 dozen bottles of it, and turned the balance of it back to the defendant. I drank some of it. I drank three or four bottles. Q. Tell the jury whether or not it was intoxicating? A. Well, I don't know; I know if I had drank more I believe it would make me drunk. I haven't had much experience in drinking beer and other intoxicating liquors. I have drank some; I drink it now if I can get it. I know the effect that beer and other intoxicating liquors have on men. Q. Now, tell the jury whether that has an intoxicating effect, whether you could feel the stimulating and exhilerating effect of it? A. Well, I tell you, I never did drink over one bottle of beer at a time; when I got this stuff, I just wanted to try it and see if a bottle would make me drunk and I drank four bottles of it, and I felt pretty good; I don't say that I was drunk; if I had drunk some more I would have been drunk."

Deadweiler testified: "I know the defendant, A. Sandeloski. I knew him on or about the 11th day of March, 1908. I lived in Jefferson at that time, and was engaged in business there. I was selling this Hiawatha. I had been running a saloon before local option took effect, and after the election I opened up in the same old saloon. After local option went into effect I sold Hiawatha. I got it from Mr. Sandeloski. I first bought five casks of pints. That is 120 bottles to the cask. I paid him $10 a cask for it. As to where I got possession of the stuff; well, there was some of it brought to me; two casks, I believe it was, from Louis Restella. Q. That Mr. Louis Restella had bought and refused to sell? A. Yes, sir, they had some falling out about it, and Mr. Sandeloski just delivered them to me and I told him I would take it. He went and got the two casks that Mr. Restella had and brought them and delivered them to me. Those two casks were in Restella's place of business in Jefferson."

It will be thus seen that Deadweiler testified he bought the two casks of Hiawatha from defendant that Louis Restella had, and Louis Restella says: "When I got this stuff I just wanted to try it and see if a bottle would make me drunk. I drank four bottles and I felt pretty good; if I had drank some more I would have been drunk." These are the identical casks that defendant was being prosecuted for selling to Deadweiler.

Again we are not mistaken about the statement of facts showing that a mixed car of beer and Hiawatha would be shipped and the beer delivered in wet territory, and the Hiawatha in dry territory. Mr. Sandeloski testified: "I usually came here and took orders, and sent in to the brewery. If I didn't fill the car they filled the car out with stock for Marshall to save freight. The Marshall stock was straight beer. Q. You wasn't shipping any Hiawatha into Marshall? A. They wouldn't buy it. I wasn't shipping any Hiawatha into Marshall. I shipped beer and Hiawatha in the same car. The beer was delivered at Marshall, and the Hiawatha came to Jefferson." If a mistake was made in inserting "saloon man" for "salesman" it does not affect the merits of the case, because it is unquestioned that defendant was making sales of Hiawatha, and sold two casks of Hiawatha already in Jefferson in Restella's place of business to Deadweyler.

Appellant further urges that "the court erred in paragraph two of its opinion in refusing to quash the information, because of a variance between it and the complaint. The complaint is the affidavit by Waldron that he has good reasons to believe and does believe is an affidavit pure and simple, in accordance with article 34, Code Criminal Procedure, and is not testimony given under oath and is the foundation for the information made by the district attorney in starting the prosecution in this case in the District Court, and the information should have conformed thereto." In Johnson v. State, 17 Texas Crim. App., 230, this court held: "We take occasion to remark that it is wholly unnecessary to state in the information that it is founded upon a complaint in writing, or make any mention whatever of the oath. This is not one of the requisites of an information. If the oath is filed with the information, it is all the law requires. (Code of Crim. Proc., arts. 430 and 431.)" There is no question in this case but what the complaint was made and filed with the information. In the case of Warren v. State, 17 Texas Crim. App., 209, it is said: "We think the information is sufficient. It directly charges the defendant committed the theft, although it states, parenthetically, 'as shown by the complaint of H. M. Sullivan.' These words not being essential, nor descriptive of the offense, may be treated as surplusage." And in this case the words "founded upon testimony taken in behalf of the State under oath" are not essential nor descriptive of the offense and should be treated as surplusage. See also Hilliard v. State, 17 Texas Crim. App., 210; Steinberger v. State, 35 Texas Crim. Rep., 492; Germany v. State, 62 Texas Crim. Rep., 276, 137 S. W. Rep., 130.

All the other questions presented are fully discussed in the original opinion, yet there is perhaps a matter we should call attention to. While we discussed the evidence taken on the motion for a new trial, it was perhaps improper for us to have done so. Court adjourned on May 2, 1911, and the evidence heard on the motion for a new trial was not filed until May 24, 1911, twenty-two days after court adjourned. In Probest v. State, 60 Texas Crim. Rep., 608, and cases there cited,

it has been held by this court that the provisions of our statutes with regard to preparation of statement of facts for. appeal have reference only and exclusively to a state of facts adduced upon the merits of the case before the jury, and that those statutes have no reference to issues of fact formed on grounds set up in motion for new trial, and that the facts as to such issues, in order to be entitled to consideration on appeal, must be filed during term time. Therefore, the motion not being sworn to, no affidavits being attached thereto, and the statement of facts on the questions being filed after term time, the question presented is not raised in a manner that we can review it.

The motion for rehearing is overruled.

'Overruled.