## Mack Rose v. The State.

### No. 4033.    Decided April 26, 1916.

### Rehearing denied June 3, 1916.

1.—Murder—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence although conflicting was sufficient to sustain the conviction, under a proper charge of the court, there was no reversible error.

2.—Same—Principals—Charge of Court—Question of Fact.

Where, upon trial of murder, the State contended that defendant was one of the principals under any contingency, and that either one Otto Manus or another person, whom the witnesses designated and called "Yellow Boy," was the other principal, and it was also an issue whether Otto Manus or the Yellow Boy was one and the same person, or different persons, although the defense contended that they were one and the same person, and the court throughout his whole charge submitted the issue to the jury on the theory that Yellow Boy might be a different person from Otto Manus, there was no reversible error. Davidson, Judge, dissenting.

3.—Same—Charge of Court—Facts for Jury—Alibi—Charge of Court.

Where, upon trial of murder, the defendant introduced testimony of an alibi both as to himself and one of the principals, who fired the fatal shot with de-

fendant's pistol, which the latter handed to him and told him to shoot deceased, and the State controverted the alibi both of defendant and his principals, and especially by Otto Manus by introducing testimony that both were present at the killing, the matter was a question of fact for the jury and the court so charged.

**4.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence did not raise .the issue of manslaughter, there was no error in the court's action in refusing to submit this issue. Davidson, Judge, dissenting.

**5.—Same—Rule Stated—Definition of Manslaughter.**

Two things at least are necessary to raise the issue of manslaughter; that is, adequate cause, and passion aroused thereby to such an extent as to render the slayer incapable of cool reflection, and an assault and battery so slight as to show no intention to inflict pain or injury is not adequate cause.

**6.—Same—Case Stated—No Adequate Cause.**

Where, upon trial of murder, the evidence showed that there was no indication that the prosecutrix stepping on the foot of one of defendant's principals caused him any such pain as the statute indicates would raise manslaughter, and if there was any assault and battery, it was so slight as to show no intention to inflict pain or injury and could be nothing more than an insult, there was no error in the court's refusal to submit the issue of manslaughter. Davidson, Judge, dissenting.

**7.—Same—Alibi—Charge of Court—Co-principal.**

Where, upon trial of murder, the court gave a direct charge on alibi as to the defendant, there was no error in the court's refusal to submit a requested charge, applying the question of alibi both to the defendant and his co-principal, Otto Manus, because thereby the court would have ignored all testimony tending to show that the person who did the shooting was some other person than said Otto Manus, and such a charge would have been misleading.

**8.—Same—Principals—Charge of Court.**

Where, upon trial of murder the evidence showed that the defendant's co-principal who killed the deceased was Otto Manus or probably a different person called "Yellow Boy," and the defendant objected to the court's charge on principals which was applicable to this state of facts, and the evidence also showed that the defendant handed his co-principal, whoever he was, a pistol and told him to shoot the deceased, which would make the defendant a principal, it was immaterial whether his co-principal was Otto Manus or any other person, and there was no reversible error. Davidson, Judge, dissenting.

**9.—Same—Self-defense—Charge of Court.**

Where, upon trial of murder, it was doubtful whether the testimony raised the issue of self-defense, but the court nevertheless charged on self-defense in defendant's favor to which there seemed to be no objection, there was no reversible error.

**10.—Same—Manslaughter—Suspended Sentence.**

Where, upon trial of murder, the issue of manslaughter was not in the case, the court did not err in refusing to submit a suspension of sentence in the event he was convicted of manslaughter.

**11.—Same—Evidence—General Reputation.**

Where, upon trial of murder, the court fully permitted all the testimony as to the general reputation of the defendant who was alone upon trial, there was no error in excluding testimony as to the general reputation of his co-principal who did the actual shooting.

**12.—Same—Continuance—Cumulative Testimony—Subsequent Application.**

Where defendant filed his second or subsequent application for continuance for alleged absent testimony, which was clearly cumulative, there was no error in overruling the application. Following Attaway v. State, 31 Texas Crim. Rep., 475, and other cases.

**13.—Same—Jury and Jury Law—Fair and Impartial Jury—Special Venire.**

Where, upon trial of murder, many of the regular veniremen were absent, some of whom had been excused, and the court issued an attachment for the absent veniremen, some of whom were brought in and passed upon, but only four jurors were selected therefrom, and the court refused to postpone the trial until all the attachments for absent regular veniremen were returned and they were brought in, and ordered defendant to proceed with the organization of the jury from the talesmen who had been summoned, and defendant did not exhaust his challenges, and the record did not show that any objectionable juror was selected, there was no reversible error. Davidson, Judge, dissenting.

**14.—Same—Jury and Jury Law—Attachment—Talesmen—Rule Stated.**

The statute on the subject of the organization of the jury from a special venire is directory and not mandatory, and where an attachment has issued for an absent juror, it is not error not to delay the trial until the return of the attachment, and to proceed with the trial and fill up the jury from talesmen. Following Murray v. State, 21 Texas Crim. App., 466; Deon v. State, 37 Texas. Crim. Rep., 506, and other cases.

**15.—Same—Reasonable Delay—Special Venire—Discretion of Court.**

It has been repeatedly held that the question of what is a reasonable delay to procure absent veniremen is left largely to the discretion of the trial judge, and where, upon trial of murder, it appeared from the record on appeal that the time the trial judge delayed waiting for the return of the attachment for the absent jurors was reasonable, there was no reversible error. Following Jones v. State, 31 Texas Crim. Rep., 177, and other cases.

Appeal from the District Court of McLennan. Tried below before: the Hon. Nat Harris, Special Judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Taylor & Forrester,* for appellant.—Upon question of court's failure to charge on manslaughter: Moore v. State, 15 Texas Crim. App., 1; Williams v. State, 15 id., 617; Bonner v. State, 29 id., 223; Arnwine v. State, 49 Texas Crim. Rep., 5; Green v. State, 58 id., 428; Gaines v. State, 148 S. W. Rep., 717.

On question of general reputation of co-principal: Heitman v. State,, 180 S. W. Rep., 701.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of continuance: Allen v. State, 62 Texas Crim. Rep., 501; Bussey v. State, 59 id., 260; Stephens v. State, 154 S. W. Rep., 1001.

Upon question of adequate cause: Cole v. State, 35 Texas Crim. Rep., 384.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder, and his punishment assessed at ten years in the penitentiary.

In practically every contested case of this character the evidence is conflicting, and frequently more or less impeachment of the material witnesses. All that occurred in this case. But as is always the case, such matters are for the jury and the lower court, and not for this court. A brief statement of the testimony only is necessary.

On Christmas evening late Florence Holloway, the deceased, was shot and killed. It occurred at a negro house of prostitution, in Waco. Deceased was an inmate of that house. A dance was in progress, or had just been, at the time of the killing. There were a large number of negro women prostitutes in the house and at the dance, and also a large number of negro men and some Mexicans. Most all attendants had been drinking. Some were drunk; others, not so drunk; and still perhaps some who had drunk none or very little.

That two persons as principals were implicated in the killing is certain. Who those two persons were was sharply contested, and the evidence directly conflicting. The State contended that appellant was one of the principals under any contingency, and that either Otto Manus, or another person, whom the witnesses designated and called "Yellow Boy," was the other principal. Whether Otto Manus and Yellow Boy was one and the same person was also in controversy. Some of the witnesses swore in effect that Otto Manus and Yellow Boy were one and the same person; another swore in effect that they were not one and the same person, that Yellow Boy was a different person from Otto Manus; others swore they could not tell whether they were one and the same person or not. The court in his whole charge submitted the issues to the jury on the theory that Yellow Boy might be a different person from Otto Manus; and, we think, unquestionably was correct under the evidence, in doing so. On the other hand, appellant contended that the court should, in submitting the issues, do so on the theory only that Otto Manus and Yellow Boy were the same identical person, and that they were not different persons. The main questions arise on these two theories.

Appellant contended and testified that he was not present at the killing, had nothing to do with it and knew nothing about it at all until several hours later; that at the time of the killing, and for several hours continuously preceding and subsequent to the killing, he was at his home in Waco, drunk and asleep, which was quite a distance from the scene of the killing. In addition, his mother and sisters, other relatives and others also so testified. He also introduced the testimony of many of the relatives of Otto Manus and others that he, Otto Manus, was not present at the killing, but was at his father's home, several miles in the country from Waco, at the time. On the other hand, the State introduced several witnesses, two at least, who testified positively that appellant and Otto Manus were present at the killing, and that appellant at the time handed Otto Manus his pistol, and in effect told Manus to shoot deceased, which he at once did. This, of course, was

a question for the jury and the lower court, and not for this court. The jury with ample evidence to support such finding found that appellant was present and participated in the killing as a principal, as stated, and without doubt did not believe the testimony of appellant and his witnesses that he was not present, but elsewhere.

One of appellant's main contentions is that the court erred in not appropriately submitting manslaughter for a finding by the jury, claiming that the evidence pertinently raised that issue. The trial judge refused to submit manslaughter, evidently because in his opinion the evidence did not raise any such issue. We have carefully studied the record and the whole testimony, and in our opinion the trial judge was right. The evidence did not raise manslaughter.

The testimony shows that the person, Otto Manus, or the yellow boy, whichever it was, was in the dance hall, and in some way, not definitely shown, a disturbance arose. The testimony would indicate that it was because of some misconduct on this person's part. One of the inmates of the house is shown to have said of this person: "There's a bad nigger out there (in the dance hall). He is cutting up." Another witness swore that deceased told this person "to get out if you can't act no better than that." And another witness swore deceased said to this person: "If you don't know how to come down here and enjoy Christmas no better than that, you had better get out." This same witness further said that deceased said to him: "If you don't know enough to come down here and enjoy Christmas without raising hell, you can get—you had better get out." The several witnesses in designating this disturbance called it an argument, quarrel, squabble, fuss, racket. Another witness for appellant swore that this person, Manus or the yellow boy, asked deceased not to step on his foot. She replied: "Why, I live here. I will put you out of here." That he made no reply to that. That she further said she never missed a Christmas sticking her knife in a mother ——. That she then went and got a knife, came back into the dance hall and stepped on his foot again. He said: "If you all fool with me, I will burn up this house." And that when he made these remarks, she "rushed" him. That he meant by rushing him that she shoved him out of the dance hall into the hall (entrance hall). Other testimony shows that perhaps some of the women in addition to deceased participated in rushing him. The testimony does not show that the deceased or any of the other women cut him or cut at him or attempted in any way to assault him other than in effect require him to leave the house, which he did, backing out. The witnesses differed as to whether deceased at any time had a knife. Some of them swore she did in the dance hall when she began to rush this person out of the dance hall. Other witnesses swore positively that she had no knife at or about the time she was shot. The evidence discloses that she in no way assaulted him or attempted to assault him after he got out of the house. Her whole purpose, as well as of the other of the women participating, was to get

him out of the house because of their claimed misconduct on his part. One witness swore that when they got him out of the dance hall into the main entrance hall, appellant was there and told him: "Come on out. I am with you." That appellant preceded him out of the house. There is no dispute of the testimony, and it was testified by two or three witnesses, that after appellant and Otto Manus, or the yellow boy, whichever it was, got out of the house, appellant said to this other person: "Don't talk so much," and handed him a pistol and told him "to shoot," and that he did shoot twice therewith. The first shot struck one of the witnesses. The other shot struck the deceased, which resulted in her death.

It is doubtful if the testimony raised self-defense. However, the court charged on self-defense in appellant's favor, to which there seems to be no objection.

It would seem to be unnecessary to discuss the law of manslaughter. However, we will say that the statute expressly, and the long line of decisions thereunder, is to the effect that two things at least are necessary to raise manslaughter; that is, adequate cause and passion aroused by that adequate cause to such an extent as to render the slayer incapable of cool reflection (P. C., arts. 1128 et seq.) ; and it is expressly stated by the statute (art. 1131) : "An assault and battery so slight as to show no intention to inflict pain or injury" is not adequate cause. The deceased in no way and at no time caused any bloodshed from Otto Manus, or the yellow boy, and none from appellant. There is no indication that her stepping on the yellow boy's, or Otto Manus's, foot at either time caused him any pain or such pain as the statute indicates would raise manslaughter, but, on the contrary, that that assault and battery, if it could be considered such, was so slight as to show no intention to inflict pain or injury. It was more in the nature of an insult than otherwise, and the statute also prescribes expressly that insulting words or gestures are not adequate cause. Otto Manus's, or the yellow boy's, remarks at the time shown above would indicate that no pain was inflicted, and that that did not arouse his passion to such an extent as to raise manslaughter. Under no phase of the evidence is the issue of manslaughter even in favor of Otto Manus, or the yellow boy, but especially as to appellant himself, raised. It excludes the idea as to appellant. We think it unnecessary to cite the cases under the statute applicable to show that manslaughter was not raised so as to require any charge thereon by the court.

Appellant complained of the court's charge on alibi and of the refusal of the court to give his special charge on the subject. The court gave a correct charge on alibi, and one that is universally approved as applicable to appellant himself. Appellant complained of the court's charge, "because it fails to apply the question of alibi to both Otto Manus and Mack Rose." The special charge he requested was to the effect of requiring the jury to believe that both appellant and Otto Manus were present and participated in the offense at the time of the killing, before he could be convicted, and wholly ignored

the fact as developed by the evidence that Otto Manus may not have been the person to whom appellant handed his pistol and who did the killing, but an altogether different person, the yellow boy, was that person. In other words, appellant was contending that the court should ignore all testimony tending to show that the person who did the shooting was some other than Otto Manus, whereas the court's charge throughout was properly based on the idea that Otto Manus may not have been the person at all who did the shooting but that an entirely different person, known and called as the yellow boy, did it. Under the circumstances of this case, it would have been entirely misleading to the jury and contrary to the very issues raised by the testimony for the judge to have ignored the testimony showing that the person who did the shooting was some other than Otto Manus and not Otto Manus, and under the circumstances of this case, appellant's special charge should not have been given, and the court's charge on the subject was correct.

The same question is raised, and that only, by appellant's complaint to the whole charge of the court, and especially on the subject of principals. The appellant objected to the court's charge on principals because the court charged, that if the person who killed deceased was Otto Manus, *or a different person called by the witnesses "Yellow Boy,"* and if appellant did and said what he is, without contradiction, shown to have done and said at the immediate time of the killing and just before it,—a part of the same transaction,—whether that person was Otto Manus or the yellow boy, that appellant would be a principal. His contention was the court should not have so worded his charge as to include in the alternative the yellow boy, a different person from Otto Manus, but in his complaint of the court's charge and in his special charge on the subject, he wanted to exclude the idea that if any person other than Otto Manus was the person to whom he handed the pistol and who did the shooting, then he should be acquitted. The court's charge and that specially requested by appellant, the refusal of which he complains of, were substantially identical except on this point. Clearly the law is that if appellant, as the testimony shows he did, not only encouraged by words and acts the party who killed deceased to kill her, but that he was present and while he himself did not do the shooting, he urged the party who did to do it, and that person killed deceased at his instigation, he would be a principal whether that person was Otto Manus, or another person, the yellow boy, and the court did not err in this particular.

Of course, manslaughter not being in the case, the court did not err in refusing to submit a suspension of appellant's sentence and give his requested charge on that subject, only in the event he was convicted of manslaughter.

We think under the circumstances of this case, the court was right in excluding testimony as to the general reputation of Otto Manus. The court fully permitted all the testimony as to the general reputation of appellant himself. This was all that was required in this case.

The court did not err in overruling appellant's motion for a continuance. It does not show whether it was the second or a third or a fourth application. It does show it was not the first. The claimed absent testimony was clearly cumulative only of other testimony appellant introduced on this trial. The statute (C. C. P., art. 609), in substance, does not authorize a second or subsequent continuance to procure cumulative testimony, and the decisions thereunder so hold. Bosley v. State, 69 Texas Crim. Rep., 100, 153 S. W. Rep., 878; Attaway v. State, 31 Texas Crim. Rep., 475, 20 S. W. Rep., 925; Harvey v. State, 35 Texas Crim. Rep., 545, 34 S. W. Rep., 623; Bonners v. State, 35 S. W. Rep., 650; Goode v. State, 57 Texas Crim. Rep., 220, 123 S. W. Rep., 597; Petty v. State, 59 Texas Crim. Rep., 586, 129 S. W. Rep., 615; Bacon v. State, 61 Texas Crim. Rep., 206, 134 S. W. Rep., 690; Sandoloski v. State, 65 Texas Crim. Rep., 33, 143 S. W. Rep., 151; Maxey v. State, 66 Texas Crim. Rep., 234, 145 S. W. Rep., 952; Pace v. State, 69 Texas Crim. Rep., 27, 153 S. W. Rep., 132; Rogers v. State, 71 Texas Crim. Rep., 149, 159 S. W. Rep., 40; Whitfill v. State, 75 Texas Crim. Rep., 1, 169 S. W. Rep., 681.

Appellant complains of the action of the court in the organization of the jury. His bill, together with the qualification of the court, shows this state of fact: This case was first set for trial for November 15th and a special venire of forty jurors issued and served requiring them to appear at that time. It seems that they then appeared. The case, however, was reset for December 13th, at which time it was tried. When the special veniremen appeared on November 15th, the court excused some of them and did not require them to attend the resetting of the case. It is not shown how many. The record shows no objection to this action of the court at the time or at any other time. When the case was called for trial at the time reset, ten only of the special veniremen were present. When the case was called, in the morning, and only ten of the jurors appeared, appellant objected to then going to trial and making up a jury or even passing on any of the ten present, and asked, and the court granted, an attachment for the absent veniremen and set the case over for 2 o'clock of that day. It seems that the previous excusing of the jurors who were excused on November 15th was by the regular judge of the court. When it came on for trial on December 13th, the regular judge was absent, and Hon. Nat Harris was elected and presided as special judge on this trial. In the meantime, after the trial judge set the case over for 2 o'clock, he learned that said jurors had been excused by the regular judge. When he again called the case for trial at 2 o'clock, appellant demanded that the trial should be postponed until the absent special veniremen should be brought in under the attachment, which was issued in the morning, and also objected to even passing on the ten veniremen who were present. When the case was postponed in the morning, the judge ordered forty talesmen to be summoned to appear at 2 o'clock. The court overruled appellant's objections and required him to proceed with the organization of the jury. The ten regular veniremen were thereupon, in accord-

ance with the statute, passed upon, and only four of the ten were selected. When this was completed, appellant again demanded that the case should be put off until the attachment for the absent regular veniremen was returned and they were brought in. The court refused this and ordered him to proceed with the organization of the jury from the talesmen who had been summoned, and this was done, and the jury was completed, and the trial had. Appellant did not exhaust his challenges. No intimation is given by the record that any juror at all objectionable to him was selected. In other words, it shows that he got a fair and impartial jury, to none of whom any objection was made. In our opinion, no reversible error was committed by the court on this point.

There are many decisions of this court holding that our statute on the subject of the organization of the jury under a special venire is directory and not mandatory. Murray v. State, 21 Texas Crim. App., 466; Jackson v. State, 30 Texas Crim. App., 664; Roberts v. State, 30 Texas Crim. App., 291; and many cases and authorities cited in these cases. It is unnecessary to collate the large number of cases of this court to the same effect.

Judge White, in section 752, subdivision a, says: "Where an attachment has issued for an absent juror it is not error to refuse to delay the trial until the return of the attachment, nor in proceeding forthwith to fill up the jury from talesmen. Deon v. State, 37 Texas Crim. Rep., 506; Mitchell v. State, 36 Texas Crim. Rep., 278; Sinclair v. State, 35 Texas Crim. Rep., 130; Jones v. State, 31 Texas Crim. Rep., 177; Stephens v. State, 31 Texas Crim. Rep., 365; Suit v. State, 30 Texas Crim. App., 319; Jackson v. State, 30 Texas Crim. App., 664; Hudson v. State, 28 Texas Crim. App., 323; Habel v. State, 28 Texas Crim. App., 588; Thuston v. State, 18 Texas Crim. App., 26; Sawyer v. State, 39 Texas Crim. Rep., 557." In Jones v. State, supra, this court, through Judge Davidson, said: "Appellant was convicted of murder in the first degree, and his punishment assessed at a life term in the penitentiary. When the jury was being empaneled, the defendant, as well as the State, asked for and obtained an attachment issued for the absent venireman, McAtee. The defendant then asked the court to suspend the further empaneling the jury until the sheriff could bring in the juror, or show cause why the attachment could not be executed. This the court refused, and ordered that the selection of jurors be proceeded with from the summoned talesmen. Defendant excepted, and duly reserved his bill of exceptions. The ruling of the court was correct. Hudson v. State, 28 Texas Crim. App., 323; Suit v. State, 30 Texas Crim. App., 319." It is needless to cite and quote the many other cases to the same effect. The statute itself (art. 696, C. C. P.) expressly provides, in effect, that no cause shall be unreasonably delayed on account of the absence of a juror who has been summoned on the regular special venire. And it has been repeatedly held that the question of what is a reasonable delay to procure absent veniremen is left largely to the discretion of the trial judge. We think clearly

under the statute and authorities and facts in this case that the time the trial judge delayed waiting for the return of the attachment for the absent jurors was reasonable.

No other question is presented for review.

The judgment will be affirmed.

*Affirmed.*

DAVIDSON, JUDGE (dissenting).—Exceptions were reserved to the charge of the court and requested instructions refused. Without details, the evidence substantially is that appellant and Otto Manus, on Christmas night, were at a dance in a house of prostitution. Florence Holloway, deceased, and other prostitutes had trouble with him in the house, of which appellant was ignorant. This resulted in Florence Holloway and the other prostitutes forcefully ejecting Manus. When they pushed him out of the door appellant was in the yard nearby and handed a pistol to Manus, remarking at the time "he was with him, shoot." The deceased stepped on the foot of Manus in the dance hall. He expostulated with her about such treatment. She at once went away, secured a long-bladed knife, returned and again stepped on his foot, remarking that she was in the habit of sticking her knife in a mother —— every Christmas. He again expostulated, stating that if they did not let him alone he would burn the house. She and the other women at once "rushed" and ejected Manus from the house. Some of the witnesses say when they reached the door pushing him out they were "fussing and cursing a great deal," and were more or less intoxicated. There is testimony that deceased, Florence Holloway, had the knife when they made their appearance at the door when Manus was being pushed out. It was then appellant was first aware of the existence of any trouble. He was not in the house and knew nothing of what occurred in there. Appellant was a warm personal friend of Manus. Without going into details on this phase of the case, appellant introduced evidence making the above testimony a little stronger and more acute in his favor as to the acts and conduct of the women in their assault on Manus. There was also evidence to the effect that Manus had been drinking in the evening and had gone to his home in the country about five or six miles from the city of Waco. There is also evidence that he was not at the dance and did not participate in the difficulty; that he was at home at the time in the country. Evidence was also introduced that appellant was not present at the dance hall, proving for him a clear alibi. The evidence strongly controverts the fact that either was present at the time and place of the difficulty, or had any connection with it. The alibi fully separated them as well as proving their alibi. Some evidence is to the effect that Manus was known as "Yellow Boy." The evidence also shows that "Yellow Boy" was not Manus, but a different man.

The court submitted the theory of alibi generally as to defendant. The substance of the charge is that if Manus, or "Yellow Boy" either, killed Florence Holloway, appellant would be guilty of murder. I am

of opinion this charge is misleading and so injuriously. The facts suggested manslaughter and self-defense, and under appropriate instructions submitting the issue of manslaughter the jury might have found him guilty only of that offense, but the court not only failed to give a charge applicable to manslaughter, but refused special instructions. Appellant's connection with it was based on the fact that Manus was retreating and he assisted Manus by handing him a pistol to resist the attack made on him by these women, some of the evidence showing that one had a knife. If "Yellow Boy" and Manus are different parties, this would strengthen the alibi of Manus, and, therefore, of the defendant. The State's case depended upon the further fact that it was Manus and the defendant who were present, and not appellant and "Yellow Boy," but if it was "Yellow Boy" and not Manus, still having given alibi the charge should have submitted the law of alibi as to the various issues and facts bearing on that question. These were matters of fact to be solved by the jury under appropriate instructions. The court could not assume facts to be true to the extent of blending them so as to submit only the identity of "Yellow Boy" and Manus as the same person. They doubtless were different persons. There is no connection proved or sought to be proved between appellant and the "Yellow Boy," and the State's case in this connection mainly depends on the fact that it was "Yellow Boy" and not Manus who was pushed out of the door and to whom appellant handed the pistol. The jury may possibly, under appropriate instructions, have found "Yellow Boy" and Manus to be the same party, but the court could not so find on determining what the charge should be. The writer does not believe the facts would have justified the conclusion they were the same. Nor would the jury have so found under the facts. However that may be, wherever the evidence raises an issue favorable to the accused it must be given to the jury under appropriate instructions. No controverted fact should be assumed against the defendant by the charge of the court.

Error was assigned and special requested instructions refused in regard to alibi. The court did charge on alibi but limited it to the defendant without reference to Manus or "Yellow Boy," except in a general way. As before stated, the court's theory was that Manus and appellant were principals only on the issue of murder, and necessarily both were present and acting together at the time of the homicide. If Manus was not present, appellant and he could not have acted together. The question is strongly presented by evidence that neither was present but both absent. If Manus was not present but absent in the country, the theory that appellant acted with him would fail. If the theory on one side is principals or conspiracy and the other is alibi as to either party, or both, then that theory should be given in charge, and if alibi is presented as to both parties as to the supposed conspiracy or alleged acts of the principals, that should have been given in charge and presented favorably to the defendant, especially as the law of principals and conspiracy is by the charge really made the basis of con-

viction. The court having given a charge on alibi, should have given it as called for by the evidence. Appellant was entitled to it under the case as presented. If either party was absent, there could be no acting together. The law of principals or conspiracy could not apply in that event. The court did not so instruct the jury. Having given the law of principals, the converse of the proposition was demanded under the facts.

There is another question I think reversible. The court submitted only murder, and only on the theory of principals and conspiracy. Appellant excepted to the charge for failing to submit the issue of manslaughter, and presented on that subject a special instruction, which the court refused. I suppose the court did this on the theory that appellant was in the yard at the time his friend was backed out or pushed back or ejected from the house, and that no adequate cause existed as to him. There would be no question under the facts that if Manus was on trial the issue of manslaughter would be a serious one, and the court would be compelled to submit that phase of the law. It is a rule of law, and part of the jurisprudence of this State, that every issue favorable to defendant must be submitted in the charge. See Branch's Annotated Penal Code, section 2045, for a great number of collated cases. In Riley v. State, 81 S. W. Rep., 711, it was stated, in effect, if the evidence raises the theory that the deceased had ceased the attack, or if deceased's weapon was not one that by the manner and use of it it was calculated to kill or inflict serious bodily injury, and the defendant's mind became excited beyond cool reflection, the issue of manslaughter is raised. This would apply to Manus. Manus in fact killed Florence Holloway. The defendant did not. The evidence for the State only shows that appellant furnished Manus a pistol with which he did the killing. It shows the parties came upon him suddenly without any knowledge or information on his part of the difficulty, which arose in the house which led to the ejection of Manus from the house. So appellant would only be responsible for the case and his connection with it as it first presented itself to him and upon which he acted. Deceased had a knife in the house and threatened to stick it in Manus when she and the other women began pushing him towards the door and forcing him out of the house. It was a sudden difficulty in the house not provoked by Manus but provoked and brought on without any necessity on the part of the women. Of all this appellant was ignorant, and he must be judged by what he saw of the difficulty at the time he furnished the pistol. They had pushed Manus out of the door and some of the testimony shows deceased still had the knife with which she began the difficulty in the room. But be that as it may, under the Riley case, supra, Manus would be entitled to a charge on manslaughter. Stepping on his foot twice, once after securing a long-bladed knife, and then forcefully ejecting him from the house under the detailed circumstances would have required the court to submit the issue of manslaughter as to Manus had he been on trial. Florence Holloway, among other things,

remarked to him at the time she stepped on his foot and had the knife, using the most vulgar and obscene language, which is not here repeated, that she was in the habit every Christmas of sticking a knife in some mother ——. This was after she returned with the knife, and it was at this time she stepped on his foot the second time. It was an unnecessary and unprovoked assault on her part, which, with the other facts, would constitute as to him adequate cause. See Harrison v. State, 47 Texas Crim. Rep., 393; Casey v. State, 50 Texas Crim. Rep., 392; Moore v. State, 26 Texas Crim. App., 322; Beckham v. State, 69 S. W. Rep., 534. It is further laid down by numerous authorities, that if the defendant aids and abets another in a killing, and the killing on the part of the slayer would be manslaughter, the issue of manslaughter is in the case as to defendant. Moffatt v. State, 35 Texas Crim. Rep., 257; Harrison v. State, 47 Texas Crim. Rep., 393; Williams v. State, 40 Texas Crim. Rep., 565. Again, it is asserted as a sound legal proposition, if defendant interferes for the protection of another, where the deceased was the aggressor, and such interference was not in pursuance of a previously formed design, and defendant used more force than was reasonably necessary for the protection of the assaulted party and killed the deceased, manslaughter is an issue. Moffatt v. State, supra. The number of cases might be extended, but these are sufficient to show the line of jurisprudence in this State. In this connection it might be well enough to cite the Lewis case in 48 Texas Crim. Rep., 614, in regard to alibi and manslaughter and their relation to each other under the given state of facts. In substance, that case holds, the opinion being by Judge Brooks, on a trial for murder where the evidence suggests the issue of alibi, upon which the court charged, and also that defendant had the right to believe that various parties were attempting to harm or kill him at the time of the homicide, which was calculated to terrorize or anger him and thus render his mind incapable of cool reflection, and that under these circumstances he shot and killed the deceased, the court should have charged on manslaughter. So here the facts show that manslaughter was in the case as to Manus, and the defendant legally having a right to act in behalf of his friend, viewed from the standpoint of manslaughter, the alibi question would not relieve the court of charging on manslaughter. In Bonner v. State, 29 Texas Crim. App., 223, it was held a party acting in behalf of another is entitled to the same justification or mitigation as the other. The court in the instant case charged on self-defense under the facts stated. For much stronger reasons the charge should have submitted the issue of manslaughter. There is no evidence that defendant brought on the difficulty to kill deceased, or even that Manus did. In fact, the evidence discloses that Manus did not, and that appellant was absent and knew nothing of the origin of the difficulty. Even if either or both brought it on and the killing occurred to prevent serious bodily injury, it would be no higher offense than manslaughter, unless it be shown that the killing was by reason of Manus and the defendant, either or both, bringing

on the difficulty for the purpose of killing or inflicting serious bodily injury. If the purpose was less than killing or serious bodily injury, the killing would be no higher than manslaughter by all the authorities and by the statute. These questions are well settled, and the court's charge was in error along these lines. The case should be viewed from the standpoint of the defendant as he saw and understood it at the time he came upon the parties engaged in the difficulty or connected himself with it. This was settled by one of the strongest written opinions to be found in our decisions by Judge Clark in Guffey v. State, 8 Texas Crim. App., 187. See also 12 Texas Crim. App., 115; 19 Texas Crim. App., 195; 29 Texas Crim. App., 240; 36 Texas Crim. Rep., 309.

Again, the court refused a continuance. This is properly presented for revision, and in the opinion of the writer ought to have been granted. This much might be said in regard to this continuance: The testimony was material from more than one standpoint, and, second, the witness had testified on a former trial, and the testimony was known to the court and to the attorneys in the case. To meet this the court qualifies the bill by stating that the prosecution offered the defendant the privilege of introducing before the jury what the witness had previously testified, but this does not meet the question. The statute requires that in order to defeat the application any admission of the absent testimony on the part of the State must be accompanied by the further admission or agreement that the testimony is true, and this was not so done in this case.

Again, the evidence to prove the good reputation of Manus should have been admitted under the Heitman case, recently decided. I do not care to discuss that question. If Manus was a man of good reputation for peace and quietude and orderly conduct and a law-abiding man, it would tend to induce appellant when he first saw the difficulty to believe that Manus was not in the wrong, but the other people were, and especially so in the light of the fact that several women were assaulting him.

These are some of the reasons why I believe the majority of this court was in error in affirming the judgment. I, therefore, respectfully enter my protest to such affirmance.